# In the United States Court of Federal Claims

No. 20-563 C

Filed: October 17, 2022

_____
|                                    | )  |
| :--- | :--- |
| BRIAN EDWARD POPE,                 | )  |
|                                    | )  |
|                *Plaintiff*, | )  |
|                                    | )  |
|   v.                     | )  |
|                                    | )  |
| THE UNITED STATES,                 | )  |
|                                    | )  |
|                *Defendant*. | )  |
| _____ | )  |

*Raymond J. Toney*, Law Office of Raymond J. Toney, Durango, CO, for Plaintiff.

*Vijaya Surampudi*, Trial Attorney, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Tara K. Hogan*, Assistant Director, for the Defendant.

## OPINION AND ORDER

**MEYERS, Judge**.

The Navy's unlawful separation of Brian Edward Pope and its subsequent conduct towards him as he sought (repeatedly) to correct the Navy's errors have been unbecoming. Both times Pope sought a disability retirement, the Navy found that he was not disabled. After Pope abandoned his disability claim and challenged his separation from the Navy (which the Navy now concedes was unlawful) and sought the 20-year retirement he would have earned had the Navy followed the law, the Navy suddenly found Pope disabled. This disability finding is arbitrary and capricious.

Throughout his 17 years, 9 months, and 28 days on active duty in the Navy, Pope's "tireless work ethic" and job performance earned high praise from his superiors right up until the end of his naval career. Pope has a thyroid condition that impacted his ability to pass the Navy's semi-annual physical readiness tests, which he failed three times near the end of his career. But there is no indication whatsoever that his condition impacted his ability to perform his job duties. None.

At the time the Navy administratively separated Pope for weight control failure, he had an appointment scheduled with an endocrinologist to evaluate his thyroid condition. Rather than wait for Pope to undergo this evaluation, the Navy separated him one week before his

appointment. After his separation, Pope sought to have his record changed to reflect a disability retirement. The Navy denied his request. Twice.

Pope then retained his current counsel who concluded that Pope was not disabled but that his separation violated the Navy's own regulations. Thus, Pope went back to the Navy seeking to set aside his separation for weight control failure and correct his record to reflect constructive service from the date of his separation until he reached 20 years of service and then transfer to the Fleet Reserve.[1] The Navy agreed that Pope's separation was unlawful but denied Pope's request to credit him with 20 years of service and grant him transfer to the Fleet Reserve. Instead, the Navy found Pope disabled based on virtually the same record that had twice before been insufficient. The only additional evidence—that Pope's condition appeared not to be responding to medication six years after the Navy separated him—is patently irrelevant to whether Pope was fit for continued Naval service in 2014. If there is a fitness for duty requirement to be a retiree of the Navy, the Government has not pointed this Court to it. For good measure, the Government now argues that Pope may not challenge the disability determination because he did not challenge it during the administrative proceedings. But there was good reason that Pope did not challenge the disability determination below—he explicitly was not asking for it, so there was no reason for him to address it.

There is not a single reference in the administrative record that even hints at Pope's inability to perform his job duties. To the contrary, Pope's superiors consistently raved about his performance. And there was no drop in his performance evaluations leading up to or at the time of his separation. Because the sole criteria for a disability determination in the Navy is the inability to perform the duties of one's job because of a disease or injury, the Navy's disability determination is not supported by (and in fact is contradicted by) the record and must be set aside.

Because the record contradicts the finding that Pope was unfit for continued naval service in 2014, he is entitled to the compensation and retirement he would have earned had he remained in the Navy until reaching 20 years of active-duty service and transfer to the Fleet Reserve. Therefore, the Court grants Pope's cross-motion for judgment on the administrative record and denies the Government's motion for judgment on the administrative record.

I.  **BACKGROUND**

Pope enlisted in the Navy on July 23, 1996, and served 17 years, 9 months, and 28 days as a Cryptologic Technician. ECF No. 19-4 at AR 1011; ECF No. 19-5 at AR 1514. There is not a job-related blemish in Pope's personnel file. To the contrary, Pope's reviewers often gave high performance evaluations. ECF No. 19-5 at AR 1237, 1244, 1246, 1265, 1331, 1340, 1388, 1390, 1428, 1434, 1436, 1439, 1445, 1454, 1461, 1474. An early review describes Pope as a "Meticulous Manager" and an "Enthusiastic Team Player" with "boundless professionalism" and "unlimited potential." *Id.* at AR 1237. Similarly, while assigned to the U.S.S. Nimitz, his

---

[1] As explained below, a servicemember in the Navy can transfer to the Fleet Reserve after 20 years of active-duty service. Members of the Fleet Reserve get paid at the same rate as retirees of other branches. Unlike other branches, members in the Fleet Reserve are subject to recall by the Navy.

commanders described Pope as a "Self-starter [and] inspirational leader" whose "efforts greatly enhanced the command[']s mission readiness and battle group integration." *Id.* at AR 1244. And these reviews continued throughout his career. Even in 2013, not long before the Navy separated him, Pope's reviewer described him as "[a] motivated self-starter with dedication and esprit-de-corps," a "team player," and "[a]n exceptional professional with a tireless work ethic." *Id.* at AR 1474.

Given these reviews, one might be wondering how the Navy came to separate Pope right before he reached 18 years of active-duty service. Pope failed the Navy's physical fitness assessment ("PFA") test several times at the end of his career. ECF No. 19-5 at AR 1411. The Navy requires servicemembers[2] to take a semi-annual PFA. ECF No. 22-1 at Pl.'s Add. 29 (OPNAVINST 6110.1J ¶ 5(b)). The PFA has three parts: (1) a medical screening; (2) a body composition assessment ("BCA"); and (3) a physical readiness test ("PRT"). *Id.* The BCA is based on height and weight tables and various measurements, and "[f]ailing the BCA portion of the PFA is an overall PFA failure." *Id.* at Pl'.s Add. 38 (OPNAVINST 6110.1J Encl. 1 ¶ 1(a)). If the servicemember passes the BCA, he or she moves on to take the PRT. "The PRT is a series of physical events that assess cardio-respiratory fitness, muscular strength, and endurance." *Id.* at Pl.'s Add. 29 (OPNAVINST 6110.1J ¶ 5(b)). The PRT includes things like curl-ups, push-ups, and a run. *Id.* at Pl.'s Add. 47 (OPNAVINST 6110.1J Encl. 1 ¶ 8(g)(5)).

Servicemembers failing a PFA must participate in a fitness enhancement program ("FEP"). *Id.* at Pl.'s Add. 29 (OPNAVINST 6110.1J ¶ 5(c)). Multiple times, however, the Navy failed to provide an FEP to Pope for reasons that are not entirely clear. ECF No. 19-1 at AR 117-18, 299. If a servicemember fails three PFAs in a four-year period, he or she faces administrative separation from the Navy. ECF No. 22-1 at Pl.'s Add. 29 (OPNAVINST 6110.1J ¶ 5(c)). The Navy does allow for medical waivers of the BCA and PRT portions of the PFA. But if someone receives two consecutive PFA cycle waivers or three waivers in a four-year period, the Navy will refer the servicemember to a medical evaluation board. *Id.* (OPNAVINST 6110.1J ¶ 5(d)).

In late December 2003, the Navy found Pope to have a "thyroid problem affecting weight." ECF No. 19-1 at AR 144. Pope received a medical waiver for his PFA in November 2010. ECF No. 19-5 at AR 1247, 1285. In February 2011, a Navy doctor diagnosed Pope with "sub-clinical hypothyroidism." ECF No. 19-1 at AR 143. On February 22, 2011, a thyroid sonogram revealed that Pope had a "mild enlargement of [his] right thyroid [and] [b]ilateral small thyroid nodules." *Id.* at AR 150. In March 2011, Navy doctors determined Pope had "Hashimoto's Thyroiditis (Chronic Lymphocytic): Biochemically euthyroid. Likely sub-clinicaly [sic] hypothyroid." *Id.* at AR 372. Further, the doctors concluded that Pope would "require regular monitoring of TFT's [Thyroid Function Tests] to watch for development of overt hypothyroidism." *Id.* With this diagnosis, the doctors released Pope without limitations and follow up as needed. *Id.* On May 6, 2011, Pope passed his PFA. ECF No. 19-5 at AR 1285.

---

[2] Some regulations refer to a "servicemember" while others to a "service member." Because servicemember appears to be the predominate spelling, the Court uses that unless quoting a regulation that uses service member.

In October 2011, Pope failed his BCA. *Id.*; ECF No. 19-1 at AR 134-35. In January 2012, Pope saw another Navy physician who found that "TSH/T4 [Thyroid Stimulating Hormone/Thyroxine] has trended marginally" but "I fail to appreciate that he has an occult thyroid disorder. . . . I'd like to see him back in a month (labs will be called to patient) and discuss further management. Unfortunately, he does not meet PRT or BCA waiver criteria." ECF No. 19-1 at AR 147, 150. Pope passed his PFA in April 2012. ECF No. 19-5 at AR 1285. In October 2012, Pope was excused from participating in the PFA because of a procedural error. ECF No. 19-4 at AR 1140.

In May 2013, Pope failed the PFA a second time due to a BCA failure. ECF No. 19-1 at AR 136-37. In November 2013, Pope again failed his BCA assessment, which was his third failure in two years. He also sought medical attention for his thyroid condition, but his lab results did not reflect abnormalities and he was released without limitations and instructed to "Follow up: as needed with PCM [primary care manager]." *Id.* at AR 190-95.

Because of his three PFA failures, the Navy began separation proceedings in January 2014. *Id.* at AR 309. On March 21, 2014, Pope got a referral to a civilian endocrinologist, Dr. Johnson. *Id.* at AR 216-18. Yet the separation process continued, and the Navy convened an administrative separation board that held hearings on March 26, 2014. ECF No. 19-1 at AR 311. Although Pope had the appointment with Dr. Johnson scheduled, the Navy refused to pause Pope's separation proceedings to wait for Dr. Johnson's opinion regarding Pope's conditions. ECF No. 19-2 at AR 420; ECF No. 19-3 at 541, 551.

A few important things happened before Pope got to see Dr. Johnson. First, on May 1, 2014, Pope passed the BCA portion of the PFA. ECF No. 19-1 at AR 141; ECF No. 19-4 at AR 1000, 1002. In fact, Pope lost 11% of his body fat in slightly less than 6 months. ECF No. 19-1 at AR 141; ECF No. 19-4 at AR 1000, 1002. Passing the BCA meant that he could take the PRT, which he did on May 8, 2014. He passed with flying colors. Of the four components of the PRT, Pope was "excellent" on three and "outstanding" on the fourth. ECF No. 19-1 at AR 142; ECF No. 19-4 at AR 1000-01. Second, the Navy administrative separation board voted unanimously to separate Pope for his weight control failures effective May 20, 2014. ECF No. 19-4 at AR 995-998, 1011. The Navy never provided Pope a separation physical to determine whether he was fit to separate from the Navy.

One week later, Dr. Johnson diagnosed Pope with chronic thyroiditis and prescribed him medication. ECF No. 19-1 at AR 219-22. During this visit, blood samples were taken and various tests run. *Id.* On July 1, 2014, Pope had a follow-up visit with Dr. Johnson, who observed that Pope "feels well. No neck symptoms. No tremor or palpitations. Weight stable" and "neck: thyroid is enlarged and without nodules. No adenopathy" and told Pope to "[f]ollow up in 6 months." *Id.* at AR 223-24.

After his separation, the Department of Veteran's Affairs ("VA") found Pope to be 100% disabled due to his hypothyroidism, which became effective May 21, 2014 (the day after his discharge). *Id.* at 231. Pope's VA rating states that "[s]ince there is a likelihood of improvement, the assigned evaluation is not considered permanent and is subject to a future review examination." *Id.* at AR 232. As part of its evaluation, the VA asked Pope whether his

4

condition was impacting his ability to work. He responded that it was not. ECF No. 19-4 at AR 871.

Since leaving the Navy, Pope continued to receive treatment for his hypothyroidism. He was taking medication and his doctors concluded that as of October 2014 his thyroid lab results were "okay." ECF No. 19-3 at 855. Similarly, a December 8, 2014 doctor's note states that his "abn [abnormal] thyroid currently treated with nl [normal] values." *Id.* at AR 858.

Pope again sought treatment for his hypothyroidism in 2020.[3] Doctor's notes from this treatment state that his "symptoms [are] not well controlled with Levothyroxine despite normal TSH & T4" and "in my professional opinion, these diseases without expert management by an endocrinologist contributed to his inability to exercise and manage his weight." ECF No. 19-1 at AR 80. On March 30, 2020, Chandler Endocrinology, LLC provided its medical opinion that "it is possible that Mr. Pope's thyroid disorder contributed to difficulty managing his weight while he was on active duty in the US Navy." *Id.* at AR 75.

## II.     Procedural Background

Prior to retaining his current counsel, Pope sought to have his retirement changed to a medical or disability retirement. In November 2014, the Board of Correction of Naval Records ("BCNR") denied Pope's request for a medical retirement, concluding that there was insufficient evidence to establish an error with his administrative separation. ECF No. 19-3 at AR 479-80. In 2018, Pope sought a disability retirement and included his entire VA record and disability rating. ECF No. 19-1 at AR 55. But the BCNR denied Pope's request a second time. As the BCNR recognized: "The sole standard to be used in making determinations of physical disability as a basis for retirement or separation is unfitness to perform the duties of office, grade, rank or rating because of disease or injury incurred or aggravated while entitled to basic pay." *Id.* at AR 56 (quoting SECNAVINST 1850.4e ¶ 3301). On that standard, the BCNR found no evidence Pope was disabled. *Id.*

After retaining his current counsel, Pope no longer sought a medical or disability retirement. ECF No. 19-1 at AR 32-34. The BCNR understood this as well, recognizing that Pope "raised the issue of lack of fitness for separation but did not specifically request a . . . medical retirement." ECF No. 19-1 at AR 4 n.2. The BCNR recognized that Pope's BCA failures alone "[were] an insufficient reason for a finding of unfitness." *Id.* at AR 4. But the BCNR denied Pope's request to void his involuntary separation and grant him constructive service credit to 20 years of active-duty service and transfer to the Fleet Reserve. *Id.* Rather, the BCNR agreed the separation was unlawful and *sua sponte* changed Pope's separation to a medical discharge and placed him on the Permanent Disability Retirement List ("PDRL") for hypothyroidism[4] with a 100% disability rating. *Id.* at AR 3-4, 6, 8-9. In June 2020, the BCNR

---

[3] The record does not indicate whether Pope was being treated for his hypothyroidism between 2015 and 2020.

[4] There are a few references in the BCNR decision to Pope having hyperthyroidism rather than hypothyroidism. These appear to be mistakes because the record is clear that Pope had and has hypothyroidism. The Court reads the BCNR decision as referring to hypothyroidism.

found for the first time (six years after discharge) that Pope "was unfit for continued naval service due to hyp[o]thyroidism at the time of his discharge from the Navy" and denied his request for constructive service credit sufficient to reach 20 years and qualification for a regular retirement. *Id.* at AR 3-4.

Pope's amended complaint has generated significant briefing. The Government filed a motion to dismiss pursuant to RCFC 12(b)(1) and 12(b)(6), and for judgment on the administrative record. ECF No. 19. Here, the Government argued that Pope failed to state a claim because he was not entitled to reenlist or remain in the Navy, meaning he could not state a claim for constructive service or transfer to the Fleet Reserve. The Government (wisely) withdrew this part of its motion when Pope explained that he relied on the safe harbor provision at 10 U.S.C. § 1176, which requires the Navy to retain sailors that have served 18 years on active duty but had inadvertently referred to 10 U.S.C. § 1167 in prior briefing (Section 1167 plainly does not apply). ECF No. 29 at 6 n.1. The Government also sought dismissal of Pope's complaint as nonjusticiable because the Government argued Pope was seeking to have the Court determine Pope was fit for military duty. The Government withdrew this motion when Pope reiterated that he was not seeking a determination of fitness for continued service, but that he was unfit to separate. *Id.* The Government also sought to estop Pope from arguing that he was fit for duty at the time of separation because he did not argue that before the BCNR. This last argument was not withdrawn and is addressed below. Pope filed a cross-motion for judgment on the administrative record. ECF No. 22.

In its reply and response to Pope's cross-motion for judgment on the administrative record, the Government filed another motion to dismiss under RCFC 12(b)(1). ECF No. 29. This second motion to dismiss alleges that Pope's challenge to the Navy's separation of him for weight control failure is moot because the BCNR set aside that separation and changed his separation to a disability retirement. ECF No. 29. Pope opposed the second RCFC 12(b)(1) motion. ECF No. 35. The Government filed its reply in support of its motion to dismiss. ECF No. 40.

### III. THE GOVERNMENT'S 12(b)(1) MOTION TO DISMISS

#### A. Standard of Review.

When deciding a Rule of the Court of Federal Claims ("RCFC") 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, this Court must assume that all undisputed facts alleged in the complaint are true and draw all reasonable inferences in the plaintiff's favor. *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The plaintiff bears the burden of establishing subject-matter jurisdiction and must do so by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). If the Court determines that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006); RCFC 12(h)(3).

This Court, like all federal courts, is one of limited jurisdiction and "possess[es] only that power authorized by [the] Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Tucker Act, 28 U.S.C. § 1491(a)(1), gives this Court authority to adjudicate "any claim against the United States founded either upon the Constitution,

or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." This Court's Tucker Act jurisdiction requires "a separate money-mandating statute the violation of which supports a claim for damages against the United States." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (noting that this additional requirement is based upon sovereign immunity principles). A money-mandating statute is "*reasonably amenable* to the reading that it mandates a right of recovery in damages." *Fisher v. United States*, 402 F.3d 1167, 1173-74 (Fed. Cir. 2005) (emphasis in original) (quoting *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472-73 (2003)). The Military Pay Act, 37 U.S.C. § 204, "serves as the money-mandating statute applicable to military personnel claiming damages and ancillary relief for wrongful discharge." *Holley*, 124 F.3d at 1465. The Military Pay Act affords active-duty members of a uniformed service an entitlement "to the basic pay of the pay grade to which assigned or distributed, in accordance with their years of service . . . ." 37 U.S.C. § 204(a)(1). "If the discharge was wrongful the statutory right to pay continues; this right serves as the basis for Tucker Act jurisdiction." *Holley*, 124 F.3d at 1465. Similarly, qualified retirees have an entitlement to retirement pay. 10 U.S.C. § 8333 (calculating retirement pay one is "entitled to"); *see also* 10 U.S.C. § 1463(a) (providing that the Government "shall" pay retired pay).

Pope also seeks nonmonetary relief in the form of correction of his service record to state that he served 20 years and then transferred to the Fleet Reserve. ECF No. 9 ¶ 129. Pursuant to the Tucker Act, "the court may, as an incident of and collateral to any such [monetary] judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States." 28 U.S.C. § 1491(a)(2). The Court has satisfied itself that Pope has met the requirements of establishing jurisdiction and turns to the Government's motion to dismiss.

> **B.     Pope's challenge to the separation for weight control failure is moot.**

The Government asserts that "Pope's claims alleging error in the Navy's procedures for administrative separation were mooted by the June 2020 decision by the BCNR." ECF No. 29 at 7. According to the Government, this is so because the BCNR set aside the Navy's discharge for weight control failure and changed it to a disability retirement. This is true and Pope's complaint is moot insofar as it seeks to set aside his separation for weight control failure. But the BCNR did not grant Pope what he asked for—"constructive service credit from the day following his discharge to the date on which he would have qualified for regular retirement, with backpay and allowances." ECF No. 35 at 4. Further, Pope alleges that "the BCNR's determination that Pope was medically unfit for duty at the time of his involuntary separation was arbitrary, capricious, unsupported by substantial evidence, and contrary to law." ECF No. 9 at 13. Thus, there are live controversies before the Court and the remainder of Pope's complaint is not moot. *Powell v. McCormack*, 395 U.S. 486, 496 (1969) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.").

The Government's RCFC 12(b)(1) motion to dismiss is therefore granted-in-part insofar as it challenges the separation for weight control failure and denied in all other respects. To be clear, this ruling does nothing to impact Pope's ability to argue that the BCNR's decision to find

him disabled and to deny him constructive service credit and transfer to the Fleet Reserve is arbitrary and capricious. Nor does it prevent him from arguing that the Navy erred in denying him a physical to determine whether he was fit for separation at the time of his discharge. In effect, this ruling does nothing more than confirm that the Navy unlawfully separated Pope for weight control failure in direct violation of Navy regulations and that the Navy already set aside that unlawful separation.

## IV.     THE GOVERNMENT'S 12(b)(6) MOTION TO DISMISS

### A.  Standard of Review.

When evaluating a RCFC 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court assumes the truth of the complaint's well-pleaded factual allegations and draws all reasonable inferences "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Based on these allegations, the Court "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (internal citation omitted). When making its determination, the Court may look beyond the complaint's allegations and consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)). Under RCFC 12(b)(6), the Court must dismiss a complaint that fails to "plausibly allege the required elements" for any claims. *Kam-Almaz v. United States*, 682 F.3d 1364, 1369 (Fed. Cir. 2012).

### B.  Pope's claim is not barred by judicial estoppel.

The Government argues that "[s]ervice members are judicially estopped from taking inconsistent positions before the BCNR and the Court." ECF No. 19 at 17. Judicial estoppel provides that "'[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, [it] may not thereafter, simply because [its] interests have changed, assume a contrary position, especially if it be to the prejudice of the [other] party . . . .'" *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). "Judicial estoppel is designed to prevent the perversion of the judicial process and, as such, is intended to protect the court rather than the litigants." *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996). In essence, judicial estoppel prevents litigants from "playing fast and loose with the courts." *Wang Lab'ys., Inc. v. Applied Comput. Scis., Inc.*, 958 F.2d 355, 358 (Fed. Cir. 1992) (quoting *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir. 1987)). In the end, judicial estoppel "'is an equitable doctrine invoked by a court *at its discretion*. . . .'" *New Hampshire*, 532 U.S. at 750 (emphasis added) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). While there is no exhaustive set of criteria for judicial estoppel, there are several factors that generally inform the Court's analysis, including whether: (1) "a party's later position [is] 'clearly inconsistent' with its earlier position"; (2) the party

"succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled'"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750-51.

The Government moves to estop Pope from arguing that he was "*fit for duty* at the time of separation." ECF No. 19 at 17 (emphasis added). According to the Government, "in Mr. Pope's numerous supplemental petitions to the BCNR, he provided ample evidence that his alleged hyp[o]thyroidism directly caused his inability to maintain weight standards." *Id.* at 18. Notice the sleight of the pen here. The Government is not stating that Pope argued to the BCNR that he was unfit for duty. Instead, the Government asserts that he "provided ample evidence" that he had a medical condition that caused his inability to maintain weight standards. Putting aside that Pope was arguing he was unfit to separate, the Government's argument makes no sense. Pope did argue that he had a medical condition that impacted his ability to maintain weight standards, and the BCNR agreed. But a medical condition that impacts one's ability to maintain weight standards does not equal a disability; it is the precise circumstance that the Navy's regulations made it unlawful for the Navy to separate Pope. That does not mean Pope was disabled. To put it simply, nothing that Pope argued to the BCNR in his petition at issue here implicates estoppel. Nor do his prior arguments (that he since abandoned) seeking a medical or disability retirement.

The Government, however, contends, without citation to anything in the record, that Pope "emphasized . . . that he was unfit for duty." ECF No. 19 at 18 . Perhaps the reason the Government fails to cite anything in support of its argument is because it flies in the face of the record. Pope simply did *not* argue that he was unfit for continued naval service—i.e., disabled. ECF No. 9 ¶¶ 57-94. Pope argued to the BCNR that he was unlawfully denied a mandatory physical evaluation upon separation that would have found him "unfit to separate" because of his thyroid condition, not that he was unfit for continued naval service. ECF No. 9 ¶ 104.

The Government wholly misses the mark because it tries to use Pope's argument that he was unfit to separate as evidence that he argued he was unfit for continued naval service. Under Navy regulation, "[t]he *sole* standard to be used in making determinations of physical disability as a basis for retirement or separation is unfitness to perform the duties of office, grade, rank or rating because of disease or injury incurred or aggravated while entitled to basic pay." ECF No. 22-3 at Pl.'s Add. 147(SECNAVINST 1850.4E ¶ 3301) (emphasis added). In other words, the analysis is whether a servicemember could perform his or her job duties. Whether one is unfit to separate, however, is determined by a physical examination to determine "if [a servicemember] need[s] further treatment or evaluations for any medical concerns." ECF No. 22 at 25-26 (quoting https://www.health.mil/Military-Health-Topics/Access-Cost-Quality-and-Safety/Disability-Evaluation/Separation-Health-Assessment[5]). The Government's confusion about the difference between fitness to separate and fitness for continued naval service is not sufficient to dismiss any part of Pope's complaint.

---

[5] Health.mil is the official website of the Military Health System.

The Government also fails the second estoppel factor—Pope failed on the merits below when he previously sought medical or disability retirement before explicitly abandoning such claims. While Pope twice sought to have the BCNR convert his discharge to either a medical or disability retirement, he was not successful either time. ECF No. 19-3 at AR 462-65, 479-80. Judicial estoppel does not preclude Pope's arguments here that he was unfit for separation but fit for continued naval service because Pope failed to "succeed[] in maintaining that position" that he was disabled when he brought that to the BCNR twice before abandoning it. *New Hampshire*, 532 U.S. at 749 (quoting *Davis*, 156 U.S. at 689). Again, these were not the arguments before the BCNR in the petition at issue here, so they are further attenuated from what might support judicial estoppel.

And neither the BCNR nor this Court have been misled by Pope's argument. The BCNR explicitly understood exactly what Pope was arguing. According to the BCNR, Pope "raised the issue of lack of fitness for separation but did not specifically request a determination of unfitness to perform the duties of office, grade, rank or rating because of disease or injury incurred or aggravated while entitled to basic pay, and a subsequent medical retirement." ECF No. 19-1 at AR 4 n.2. In plain terms, Pope argued that he was unfit to separate, not that he was disabled. The Court, like the BCNR, is aware of the difference between Pope's fitness to perform his duties and Pope's fitness to separate. Neither has been misled. The fact that the Government's motion is confused by the two terms is not sufficient to estop Pope from making his arguments.

Finally, the Government's reliance on *Metz v. United States*, 466 F.3d 991 (Fed. Cir. 2006), is misplaced. ECF No. 29 at 13. Under *Metz*, "'[s]imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.'" 466 F.3d at 999 (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)). Of course, *Metz* is predicated on an issue being before the BCNR. But here Pope was not seeking the disability retirement the BCNR imposed and there is no indication that Pope was on notice the BCNR intended to grant relief he did not seek. ECF No. 19-1 at AR 4 n.2, 8; ECF No. 22 at 24. Pope received no "unfair advantage" before the BCNR; rather, he argued that he was "unfit for separation." Therefore, there is no unfairness to the Government in allowing Pope to continue to argue to this Court precisely what he argued to the BCNR.

The Court denies the Government's motion to dismiss under RCFC 12(b)(6).

## V.     JUDGMENT ON THE ADMINISTRATIVE RECORD

### A.     Standard of review

The Court reviews the BCNR's June 17, 2020, decision "to determine whether it is arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Lewis v. United States*, 458 F.3d 1372, 1376 (Fed. Cir. 2006) (citing *Martinez*, 333 F.3d at 1314); *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (citations omitted); *see also Barnes v. United States*, 473 F.3d 1356, 1361 (Fed. Cir. 2007) ("We apply the same standard of review as the United States Court of Federal Claims, which means 'we will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial

evidence.'") (quoting *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005)). The Court may set aside the BCNR's decision if it "'offered an explanation for its decision that runs counter to the evidence before the agency, or the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Filo v. United States*, 154 Fed. Cl. 17, 22 (2021) (quoting *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009)).

"Although courts afford great deference to the decisions of boards for the correction of military records, that deference is not absolute. Correction boards are obligated to 'examine relevant data and articulate a satisfactory explanation for their decisions.'" *Rominger v. United States*, 72 Fed. Cl. 268, 273 (2006) (citation omitted). To prevail, Pope "must show by 'cogent and clearly convincing evidence' that 'the action of the military is arbitrary, capricious, unsupported by substantial evidence or contrary to applicable statutes or regulations.'" *Johnson v. United States*, 97 Fed. Cl. 267, 270 (2011) (citing *Stine v. United States*, 92 Fed. Cl. 776, 791 (2010)), *aff'd*, 467 F. App'x 883 (Fed. Cir. 2012).

Pursuant to RCFC 52.1, a motion for judgment upon the administrative record requires the Court to determine whether "the plaintiff has met [his] burden of proof to show that the decision was not in accordance with law." *Melendez Camilo v. United States*, 89 Fed. Cl. 671, 677 (2009), *aff'd*, 642 F.3d 1040 (Fed. Cir. 2011). The Court must complete a "trial on a paper record, allowing fact-finding by the trial court." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005).

> **B. BCNR's June 17, 2020 decision is arbitrary, capricious, and unsupported by substantial evidence.**

The Government asserts that "[t]he record demonstrates that Mr. Pope cannot meet the considerable burden" to warrant a judgment upon the administrative record in his favor. ECF No. 19 at 20. Nonsense. Pope carries his burden of proving his entitlement to the relief he seeks like he passed his final PRT right before the Navy unlawfully kicked him out—by a wide margin.

According to the BCNR, Pope's "medical conditions, had they been vetted through the PEB [Physical Evaluation Board], . . . would have qualified him for discharge due to unfitness to perform the duties of his office, grade, rank or rating because of a disease or injury incurred or aggravated while entitled to basic pay, *as outlined in SECNAVINST 1850.4 series*." ECF No. 19-1 at AR 8. The BCNR reached this conclusion based on its consideration of Pope's medical history going back to 2003, his VA disability rating, and treatment records from 2020. *Id.* at AR 4-5. Conspicuously absent from the BCNR's evaluation is *any* indication that Pope could not actually perform his duties as a cryptologic technician, which is no slight omission because "[t]he *sole* standard to be used in making determinations of physical disability as a basis for retirement or separation is unfitness to perform the duties of office, grade, rank or rating because of disease or injury incurred or aggravated while entitled to basic pay." ECF No. 22-3 at Pl.'s Add. 147 (SECNAVINST 1850.4E § 3301) (emphasis added). It is not enough to have a disease or injury. Rather, the disease or injury must "*materially* interfere with the member's ability to perform reasonably the duties of his or her office, grade, rank, or rating/MOS on active duty." ECF No. 22-3 at Pl.'s Add.140 (SECNAVINST 1850.4E § 3202(c)) (emphasis in original).

11

The central question, therefore, is whether Pope was able to perform his duties as a cryptologic technician when the Navy discharged him on May 20, 2014. The analysis begins with a review with Pope's performance leading up to his separation because "[i]f the evidence establishes that the service member adequately performed his or her duties until the time the service member was referred for physical evaluation, the member may be considered Fit even though medical evidence indicates questionable physical ability to continue to perform duty." ECF No. 22-3 at Pl.'s Add. 148 (SECNAVINST 1850.4E ¶ 3303(c)); *Williams v. United States*, No. 02-585C, 2006 WL 5629680, at *7 (Fed. Cl. June 2, 2006) ("Whether or not a member has a listed disability, the essential inquiry is always whether the symptoms prevented the member from satisfactorily performing his duties."); *see also Joslyn v. United States*, 110 Fed. Cl. 372, 393 (2013) (rejecting a disability claim because of satisfactory performance reviews despite injuries). Other than the weight control failures, Pope's evaluations include only "early promote," "must promote," and "promotable" ratings. ECF No. 19-5 at AR 1237, 1244, 1246, 1265, 1331, 1340, 1388, 1390, 1428, 1434, 1436, 1439, 1445, 1454, 1461, 1474. Pope's penultimate evaluation on November 12, 2013, is typical:

> *A motivated self-starter with dedication and esprit-de-corps.*
>
> -   SUBJECT MATTER EXPERT. Efficiently managed 142 COMSEC accounts worldwide, correcting 14,377 inventory discrepancies and clearing 523 errors. Provided prompt completion of semi-annual and change of custodian inventory reports.
>
> -   TEAM PLAYER. *Selected for additional responsibilities* as and [sic] Electronic Key Management System (EKMS) Registration Authority (RA). Completed one COMSEC account closure and inactivated two accounts.
>
> -   COMMUNITY ORIENTED. Dedicated eight off-duty hours volunteering for the Arizona First Lego League 2012. Judged students' abilities to improve a process and created a wholesome product specifically designed to assist elderly citizens.
>
> An exceptional professional *with a tireless work ethic.*

*Id.* at AR 1474 (emphasis added). Pope's final evaluation on June 5, 2014, found all aspects of Pope's work either met or exceeded standards, except for the weight control failures. *Id.* at AR 1461.

In fact, the only blemishes on Pope's evaluations are the BCA failures. *Id.* at AR 1460-61, 1473-74. Pope did fail the BCA again between his November 2013 evaluation and his final evaluation. This third failure supports the Navy's abandoned (and unlawful) rationale for Pope's discharge for weight control failure, not an inability to perform his duties. But being assigned additional duties, "efficiently" performing large assignments, having a "tireless work ethic," and volunteering in the community are not descriptors of someone unable to perform the duties of his office, grade, rank, or rating. And Pope passed his final PFA (the BCA and PRT) with flying colors. Of the four components of the PRT, Pope earned an "excellent" rating for three and an

"outstanding" rating for the fourth. ECF No. 19-1 at AR 142; ECF No. 19-4 at AR 1000-01. Those are not the reviews or PFA scores of a disabled cryptologic technician.

The Government pushes back on the relevance of Pope's ability to perform as a cryptologic technician, calling Pope's argument that he was ably performing his duties a red herring. ECF No. 29 at 17. According to the Government, Pope's inability to pass the physical fitness requirements is a condition of his continued naval service and should be the focus of the inquiry. It is somewhat difficult to take this argument seriously. It is true that servicemembers must meet physical fitness requirements to remain in the Navy—*unless* they have a medical condition that materially impacts their ability to do so. ECF No. 22-1 at Pl.'s Add. 18 (DoDI 1332.14, ¶ 16(a)(1) to (2)). Pope does. That is the entire reason that Pope's separation for weight control failure was unlawful. The BCNR conceded this when it set aside Pope's unlawful separation for weight control failure. And this is the entire basis of the Government's motion to dismiss Pope's challenge to the illegal separation. Arguing that weight control failures justify a disability retirement also is frivolous because the "[i]nability to take/pass the PRT/PFT *will not be the sole basis for a finding of Unfit to continue naval service*." ECF No. 22-4 at Pl.'s Add. 151 (SECNAVINST 1850.4E § 3307) (emphasis added). The Government's argument is a transparent attempt to make an end run around DoDI 1332.14 and ignore SECNAVINST 1850.4E § 3307, which this Court will not allow. The DoD and Navy wrote these rules and forces servicemembers to abide by them, and the Court will ensure that the Navy does so as well.

Before turning to whether there was evidence of disability beyond the BCA failures, the Court must respond to an argument the Government made during oral argument regarding SECNAVINST 1850.4E § 3307. During argument, the Government asserted that the inability to pass the PFA could be the sole basis for finding a servicemember disabled because the regulatory section's title is "Standards And Criteria Not Normally To Be Used As The Sole Basis For Determining Fitness Or Unfitness." ECF No. 44 at 62:9-63:18; *see also* ECF No. 22-4 at Pl.'s Add. 151 (SECNAVINST 1850.4E § 3307). Thus, the Government contended that the Court should remand this case to the BCNR to allow it to explain why the inability to pass the PFA was sufficient to find Pope disabled in this case. There are many problems with this ill-conceived argument, but the Court need only recognize two.

First, it is a basic tenant of interpretation that a section title cannot change the meaning of clear text. As the Supreme Court explained, "the wise rule [is] that the title of a statute and the heading of a section cannot limit the plain meaning of the text . . . . For interpretive purposes, they are of use only when they shed light on some ambiguous word or phrase . . . . But they cannot undo or limit that which the text makes plain." *Bhd. of R.R. Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29 (1947) (citations omitted). And here the plain text of the regulation states that the "[i]nability to take/pass the PRT/PFT *will not be the sole basis* for a finding of Unfit to continue naval service." ECF No. 22-4 at Pl.'s Add. 151 (SECNAVINST 1850.4E § 3307) (emphasis added). There is simply no ambiguity in the operative provision that the section title can clarify.

Second, the Government's argument contradicts the BCNR's own decision that the Government purports to defend. The BCNR concluded that "[p]ursuant to SECNAVINST 1850.4 series, para. 3307, the inability to take or pass the PRT/PFT will not be the sole basis for a finding of unfit to continue naval service." ECF No. 19-1 at AR 4. In the plainest of terms, the BCNR simply did not find the BCA failures sufficient to find Pope disabled; it explicitly

13

recognized that Pope's failures were not sufficient to find him disabled on their own. It would be nonsensical to remand the case to the BCNR for it explain why it did something that it expressly did not (and recognized it could not) do—i.e., find that the inability to pass the PFA was sufficient alone to find Pope disabled. The Government's oral motion to remand is denied.

If Pope had obtained medical waivers for two consecutive PFA tests or three waivers in a four-year period, there would have been a referral to a MEB,[6] which would have provided a "prognosis for return to full duty." ECF No. 22-1 at Pl.'s Add. 29 (OPNAVINST 6110.1J ¶ 5(d)). But Pope only obtained one waiver in the four years leading up to his separation. ECF No. 19-4 at AR 1000. The fact that he may have chosen not to seek additional waivers because he knew it could lead to a disability referral is irrelevant. Not to mention that in January 2012 a Navy doctor specifically concluded that Pope's thyroid condition did not qualify for a PFA waiver. ECF No. 19-1 at AR 147, 150. In any event, the regulations make clear that obtaining waivers can lead to a referral, not having a condition that could justify a waiver. In short, the Navy's unambiguous regulations make clear that nothing about Pope's physical fitness testing justifies a disability retirement.

The question, therefore, is whether there is anything else in this record that supports the BCNR's finding that there is something more than the PFA failures showing Pope was disabled. In addition to Pope's PFA failures, the BCNR found Pope disabled based on "the totality of the available medical . . . diagnoses and treatment . . . ." ECF No. 19-1 at AR 4. According to the BCNR, the additional facts showing Pope's disability are: (1) Pope's diagnosed thyroid condition dating back to 2003; (2) the VA's 100% disability rating effective the day after his separation; and (3) the 2020 doctor's note stating that Pope's condition was not responding well to medication. *Id.* Under governing regulations, none of these facts support the BCNR's decision.

First, the fact that Pope had a thyroid condition dating back to 2003 is uncontroverted. But it does nothing to show that he was disabled. Nor does the BCNR contend that Pope was disabled back to 2003 (such a contention would be frivolous). The only thing the diagnoses show is that Pope had a thyroid condition, which all agree impacted his ability to manage his weight and pass the PFA. But for a thyroid condition to be a disability, it must have "severe symptoms not controlled by accepted therapy." ECF No. 22-4 at Pl.'s Add. 192 (SECNAVINST 1850.4E § 8011(f)). Further, the "mere presence of disease" does not justify a referral to a PEB, much less a disability finding. ECF No. 22-4 at Pl.'s Add. 140 (SECNAVINST 1850.4E § 3202(c)). As should be clear by now, a disability must "*materially* interfere with the member's ability to perform reasonably the duties of his or her office, grade, rank or rating/MOS on active duty." *Id.* (emphasis in original). Here the record is clear that Pope's thyroid condition did not impact his job performance at all, a fact the Government does not contest. Nor did Pope's

---

[6] A Medical Evaluation Board is: "A body of physicians (or others specifically designated by CHBUMED) convened in accordance with reference (f), Chapter 18, to identify members whose physical and/or mental qualification to continue on full duty is in doubt or whose physical and/or mental limitations preclude their return to full duty within a reasonable period of time. They are convened to evaluate and report on the diagnosis; prognosis for return to full duty; plan for further treatment, rehabilitation, or convalescence; estimate of the length of further disability; and medical recommendation for disposition of such members." SECNAVINST 1850.4E ¶ 2043.

condition prevent him from passing the PFA in the weeks before his unlawful separation, or even qualify him for a PFA waiver as of 2012, ECF No. 19-1 at AR 147, 150. Of course, if Pope's thyroid condition did not even qualify for a PFA waiver, it is inconceivable that it qualified as a disability.

Second, the BCNR has long rejected the notion that a VA disability rating is probative of whether someone is disabled under DoD regulations, which require the inability to reasonably perform his or her job duties. ECF No. 22 at 31 (collecting cases). In each of these cases Pope relies upon, the BCNR rejected disability claims based on VA ratings because the VA issues its ratings without regard to one's ability to perform his or her military duties, which is the sole criteria for a DoD disability rating. And the BCNR has rejected hypothyroidism as a disability despite a VA rating because the applicant failed to demonstrate that he could not reasonably perform his duties at the time of his discharge. *Id.* (quoting BCNR No. 09726-04 (Oct. 22, 2008)). This Court, too, has regularly found that VA and DoD disability determinations are distinct because they apply different standards—specifically that the VA does not determine fitness at the time of separation. *Id.* at 32 (citing *Myers v. United States*, 50 Fed. Cl. 674, 693 (2001)); *see also id.* at 32-33 (collecting cases). As this Court has held, "the Navy may—and routinely does—find that the DVA's higher rating is not probative due to that agency's distinct rating standard, namely the DVA's focus on the effect of the disability on the veteran's civilian employment." *Stine*, 92 Fed. Cl. at 796.

It is undeniably true that the DoD and VA apply different standards to their disability determinations, but this does not resolve the matter. According to the Government, the DoD is not bound by a VA determination but is free to rely on it if the DoD so chooses. ECF No. 29 at 18 (citing *Stine*, 92 Fed. Cl. at 795). This may be true, but the "sole" standard on which a DoD disability determination must rest is the inability to reasonably perform one's military job duties. Thus, according to the Navy's own regulations, "[u]nlike the DVA, the military departments must *first* determine whether a service member is Fit to reasonably perform the duties of the member's office, grade, rank, or rating." ECF No. 22-4 at Pl.'s Add. 155 (SECNAVINST 1850.4E ¶ 3802(a)) (emphasis added). Only *after* this determination does the DoD apply the VA disability rating. Because the record shows that Pope was performing his duties, and doing so at a high level, there is no basis for the BCNR's reliance on the VA's disability rating to establish that Pope was disabled at the time of his separation.

Third, the 2020 doctor's evaluation notes that state Pope's thyroid condition was not responding well to medication are not probative of his condition in 2014. The Court looks closely here because this appears to be the only information that was not before the BCNR when it denied Pope's disability retirement claims twice before. If there is evidence of a disability sufficient to reverse those two prior findings, the Court assumes it would be here because without something more than what was before the BCNR when it twice rejected that Pope was disabled, the BNCR's change would be arbitrary and capricious.

According to the Government, Pope's "post-discharge history is particularly compelling." ECF No. 19 at 25. "Compelling of what?" one might ask. The only question relevant here is whether Pope was unable to perform his duties (was disabled pursuant to DoD standards) at the time of his separation from the Navy in 2014, not in 2020. There is absolutely no requirement that Pope be physically fit to be a retiree of the Navy.

15

SECNAVINST 1850.4E provides that for hypothyroidism to be a qualifying disability, it must manifest "[s]evere symptoms not controlled by accepted therapy." ECF No. 22-4 at Pl.'s Add. 192 (SECNAVINST 1850.4E § 8011(f)). Putting aside the lack of "severe symptoms" anywhere in the record and Pope's ability to perform his duties at a high level (which are sufficient alone to make the BCNR's disability finding arbitrary and capricious), it also appears that Pope's condition was responding to treatment in 2014. Dr. Johnson evaluated Pope on May 27, 2014 (one week after Pope's discharge). ECF No. 19-1 at AR 220-24. Pope scheduled a follow-up medical assessment with Dr. Johnson for one month later. *Id.* at AR 221. On June 26, 2014, Dr. Johnson prescribed Pope medication for his hypothyroidism. *Id.* at AR 219. At Pope's one month follow-up with Dr. Johnson on July 1, 2014, his medical record states "[Pope] taking levo-thyroxine, 50 mcg daily. He feels well. No neck symptoms. No tremor or palpitations. Weight stable." *Id.* at AR 223. Pope scheduled a follow-up appointment for six months later. *Id.* at AR 224. And Pope's blood work was "okay" in October 2014. ECF No. 19-3 at AR 855. Similarly, a December 8, 2014 doctor's note states that his "abn [abnormal] thyroid *currently treated with nl [normal] values*." *Id.* at AR 858 (emphasis added).

Of course, the BCNR twice denied Pope's claims that he was entitled to a disability retirement based on materially the same record as before the Court now. There was good reason for the BCNR's prior denials—the record is devoid of any evidence whatsoever that Pope was unable to perform his job duties. To the contrary, even when the Navy was unlawfully separating Pope, his superiors continued to give him strong reviews. The BCNR's decision simply asserts Pope would have been disabled without any reference to his inability to perform his job duties or citation to the record. It also bears repeating that at the time of his separation Pope could take and pass the PFA—he did so with three scores of "excellent" and one of "outstanding." ECF No. 19-1 at AR 142; ECF No. 19-4 at 1000-01. In other words, at the time of his separation, Pope's thyroid condition did not prevent him from taking and passing the PFA, much less impact his ability to perform as a cryptologic technician.[7]

In short, the conclusion that Pope was disabled at the time of his separation is wholly unsupportable with this record.[8]

C.      **The Navy's safe harbor**

For Pope to recover the back pay and 20-year retirement he seeks, Pope would need to have reenlisted once more because his final enlistment would have carried Pope past 18 years, but not all the way to 20. Because no sailor has a legal right to reenlist in the Navy absent an

---

[7] Even if there were any doubt regarding Pope's fitness for duty, the "[b]enefit of unresolved doubt shall be resolved in favor of the fitness of the service member under the rebuttable presumption that the member desires to be found Fit." ECF No. 22-4 at Pl.'s Add. 150 (SECNAVINST 1850.4E ¶ 3306(a)). Given Pope's extended litigation challenging the unfitness determination, the "presumption that [he] desires to be found Fit" is on solid ground.

[8] Because the Court concludes that the BCNR's disability determination is contradicted by the record, it is not necessary to reach Pope's further arguments regarding the Navy's denial of a separation physical, the Navy's failure to provide a fitness enhancement program for Pope, and the Navy's refusal to suspend the administrative separation proceedings to allow Pope to see Dr. Johnson before separation.

express statute or regulation granting a right to reenlist, the Court must now determine whether any such statute applies to Pope. *Dodson v. United States*, 988 F.2d 1199, 1203-04 (Fed. Cir. 1993) (citations omitted).

Had Pope served just over two more months (approximately 64 more days), 10 U.S.C. § 1176 would grant him the right to reenlist. 10 U.S.C. § 1176(a) provides that if an enlisted servicemember "is within two years of . . . qualifying for transfer to the Fleet Reserve . . . [he] *shall be retained* on active duty until the member is qualified for . . . transfer to the Fleet Reserve . . . ." 10 U.S.C. § 1176(a) (emphasis added). In the Department of the Navy, transfer to the Fleet Reserve means the member is paid the same retirement as retirees of other service branches but is subject to recall. An enlisted member may transfer to the Fleet Reserve after 20 years of active-duty service. 10 U.S.C. § 8330(b). In plain English, this means that if Pope reached 18 years of active-duty service, the Navy had no choice but to reenlist and retain him on active duty until he reached 20 years of active-duty service unless some other provision allowed for his separation. The Navy does not suggest that any other provision would have allowed for Pope's separation. Given his clean record and strong performance reviews, the Court finds no basis to conclude that Pope would have been involuntarily separated from the Navy after he reached 18 years of service but before he completed 20 years of service.

This Court has addressed claims like Pope's before. In *Carmichael v. United States*, 66 Fed. Cl. 115 (2005), the plaintiff sought constructive service and full retirement under 10 U.S.C. § 1176. The *Carmichael* Court concluded that "[i]f the circumstances described in 10 U.S.C. § 1176(a) arose, plaintiff nevertheless would have been 'retained on active duty until [he was] qualified for retirement or transfer[red] to the Fleet Reserve or Fleet Marine Corps Reserve.'" 66 Fed. Cl. at 128 (second and third alterations in original) (quoting 10 U.S.C. § 1176(a)). Because Carmichael had "provided exemplary service to the Navy" for 16 years, the Court found that his trajectory to 20 years was clear. *Id.* This is even clearer for Pope who also provided exemplary service to the Navy and needed to serve a mere two more months to reach the safe harbor. Because Pope's enlistment contract's end date was within two years of him reaching 20 years of active-duty service, absent the unlawful discharge he would have had "a firm right to continued service under 10 U.S.C. § 1176(a)." *Strickland v. United States*, 69 Fed. Cl. 684, 712 n.17 (2006).

Because the BCNR's decision to change Pope's separation to a disability retirement was arbitrary and capricious, it denied him a statutory right to reenlist and continue military service until completing 20 years of service at which time he would have been able to transfer to the Fleet Reserve. "Because plaintiff was on track to complete twenty years of service . . . his recovery necessarily encompasses back pay as well as benefits, . . . which would have vested at any point prior to or on [reaching twenty years of service]." *Carmichael*, 66 Fed. Cl. at 128; *see also Strickland v. United States*, 73 Fed. Cl. 631, 632-33 (2006) (ordering correction of military record and transfer to Fleet Reserve).

### D.     Relief

But for the Navy's unlawful separation, Pope would have continued to serve admirably on active duty until reaching 20 years of active-duty service. He is thus entitled to the constructive service from the date of his unlawful separation until the date on which he would

17

have reached 20 years of active-duty service, transfer to the Fleet Reserve, and the retirement pay from the date of transfer to the Fleet Reserve forward. The Court is aware that there will be offsets for amounts DoD paid to Pope in DoD disability payments since his unlawful separation that will need to be accounted for in a final judgment. There is also an issue of VA disability payments that DoD is also trying to recoup from Pope as well. To sort out all the pay that Pope is entitled to and the offsets he will be liable for under this Order, the Court will refrain from entering final judgment so that it may remand this case to the Department of Defense to calculate the proper damages and offsets, which the Court will discuss with the parties during a forthcoming status conference.

For the avoidance of doubt, the Court will be entering a final monetary judgment for Pope following remand and incident to that monetary judgment will order that the Navy correct his record: (1) by setting aside Pope's unlawful separation; (2) by setting aside Pope's disability retirement; (3) to reflect constructive service to the date Pope would have reached 20 years of active-duty service; and (4) transferring Pope to the Fleet Reserve effective the day following his reaching 20 years of active-duty service. *See* 28 U.S.C. § 1491(a)(2).

## VI. CONCLUSION

For the reasons stated above, the Court:

1. Grants-in-part the Government's second RCFC 12(b)(1) motion to dismiss Pope's complaint as moot, ECF No. 29, insofar as it seeks to dismiss Pope's challenge to his separation for weight control failures that the BCNR set aside and denies the motion insofar as it seeks to dismiss anything more;

2. Denies the Government's RCFC 12(b)(6) motion to dismiss and motion for judgment on the administrative record, ECF No. 19; and

3. Grants Pope's cross-motion for judgment on the administrative record, ECF No. 22. The Court defer entering judgment so that this action can be remanded to the appropriate agency within the DoD to calculate damages and offsets in accordance with this opinion.

**IT IS SO ORDERED.**

> s/ Edward H. Meyers
> Edward H. Meyers
> Judge