# In the United States Court of Federal Claims

No. 20-563 C

Filed: June 28, 2024

_____
)
BRIAN EDWARD POPE, )
)
               *Plaintiff*, )
)
  v. )
)
THE UNITED STATES, )
)
               *Defendant*. )
_____ )

*Raymond J. Toney*, Law Office of Raymond J. Toney, Durango, CO, for Plaintiff.

*Vijaya Surampudi*, Trial Attorney, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Tara K. Hogan*, Assistant Director, for the Defendant.

## **ORDER**

**MEYERS, Judge**.

      The Government has moved the court to reconsider its prior decision in this matter granting judgment on the administrative record to Brian Pope and ordering back pay and transfer to the Fleet Reserve. According to the Government, the court erred in finding Pope fit for continued naval service. The court did no such thing, so this argument fails to justify reconsideration. The Government also claims, for the first time, that the court lacked authority to order Pope's transfer to the Fleet Reserve because that is a discretionary choice beyond this court's competence to make. Had the Government raised this issue at any point before, the court would have agreed. And because the discretion vested in the Secretary of the Navy goes to a jurisdictional question, the court concludes that the Government's failure to raise this issue before does not constitute a waiver. Thus, the court will remand the question of Pope's transfer to the Fleet Reserve to the Navy for its consideration in the first instance. Finally, the Government seeks reconsideration of the court's order insofar as it ordered Pope to receive "retirement pay" rather than "retainer pay." Here, the court agrees—the court was not using "retirement pay" in its statutory sense and intended to order pay for Pope in the Fleet Reserve. This use of the wrong terms was erroneous. That said, because the court is remanding the case for the Navy to address Pope's transfer to the Fleet Reserve, the court will remove the reference to retirement pay altogether. Thus, the court grants-in-part and denies-in-part the Government's motion to reconsider.

I.      **Standard of Review**

Under Rule 59, the court "'may grant a motion for reconsideration when there [is] . . . a need to correct clear factual or legal error or prevent manifest injustice." *Biery v. United States*, 818 F.3d 704, 711 (Fed. Cir. 2016) (quoting *Young v. United States*, 94 Fed. Cl. 671, 674 (2010)).  That said, "[a] motion for reconsideration must also be supported 'by a showing of extraordinary circumstances which justify relief.'" *Biery*, 818 F.3d at 711 (quoting *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir.2004)).  Such a motion is not intended to give "an unhappy litigant an additional chance to sway the court." *Lee v. United States*, 130 Fed. Cl. 243, 252 (2017), *aff'd sub nom.*, 895 F.3d 1363 (Fed. Cir. 2018).  "It is not sufficient for [parties] to reassert the same arguments they made in earlier proceedings, nor can [they] raise new arguments that could have been made earlier." *Id.*; *see also Prati v. United States*, 82 Fed. Cl. 373, 377 (2008) ("It should be stressed that a motion for reconsideration is not a forum in which a losing party may re-argue its case.").

II.     **Discussion**

According to the Government, the court committed three clear errors.  First, the Government argues that the court erred in finding Pope fit at the time of his separation and for the two years and two months after.  Second, the Government argues that the court should have remanded the case to the BCNR to determine whether Pope would have been transferred to the Fleet Reserve.  Finally, the Government argues that the court erred on ordering "retired pay" from the point that Pope reached 20 years of active duty.  The court addresses each in turn.

    A.      **This Court did not hold Pope fit for continued naval service.**

The Government first alleges the court erred by overstepping its proper role in a military pay claim.  Specifically, the Government argues that "the Court should have remanded for further investigation[1] and explanation on the fitness issue rather than find [Pope] fit at the time of his discharge and for two years and two months thereafter." ECF No. 51 at 3.  Thus, the Government argues, "the Court erred in directing the Navy to find that Mr. Pope was fit for duty, both on the date of his discharge, and for two years and 64 days thereafter with respect to which there is no factual record before the Court, without allowing the Navy discretion to further develop the factual record, to provide additional explanation, and to make a new decision on the matter." ECF No. 51 at 6.  Given the Government's clear misunderstanding of what the court's decision did, the court takes this opportunity to further clarify it.  As explained below, this court stayed within "the traditional role of the court on review . . . 'to determine not whether the claimant was unfit for service at the time of his release but rather whether the finding of the Secretary * * * that the serviceman was [un]fit was so arbitrary, capricious or unsupported by

---

[1] This is a curious argument given that "[t]he [BCNR] is not an investigative body.  Its function is to consider applications properly before it for the purpose of determining the existence of error or injustice in the naval records of current and former members of the Navy and Marine Corps, to make recommendations to the Secretary or to take corrective action on the Secretary's behalf when authorized." 32 C.F.R. § 723.2.  That said, the BCNR does have an obligation to help service members and veterans obtain personnel or medical records when they encounter difficulty obtaining them.  10 U.S.C. § 1552(a)(3)(C).

evidence as to be contrary to the applicable principles of law.'" *de Cicco v. United States*, 677 F.2d 66, 70 (Ct. Cl. 1982) (quoting *Harris v. United States*, 177 Ct. Cl. 538, 541 (1966)) (second alteration in original) (additional citations omitted).

At the outset, this court did *not* find that Pope was fit for continued naval service at the time of his separation or at any time thereafter. Rather, the court held that the BCNR's determination that Pope was unfit for continued naval service was arbitrary and capricious for several independent reasons. *See Pope v. United States*, 162 Fed. Cl. 566, 570 (2022) ("This disability finding is arbitrary and capricious."); *id.* at 571 ("[T]he Navy's disability determination is not supported by (and in fact is contradicted by) the record and must be set aside.").[2] In short, the BCNR's decision failed as a matter of law, fact, and common sense.

The Government's argument fails based on its refusal to accept that this is an unlawful separation case. As the court explained before, nobody disputes that the actual reason the Navy separated Pope—weight control failure—was unlawful due to his thyroid condition. The BCNR recognized this. *Id.* at 574; *see also* ECF No. 19-1 at AR 0004-5 (BCNR setting aside the separation for weigh control failure). The presumptive relief Pope is entitled to for an unlawful separation is constructive service and back pay, which is precisely what this court awarded. "The constructive service doctrine embodies the concept [that] members of the military who have been improperly discharged are treated as having continued to serve until they are properly discharged; they are therefore entitled to back pay and allowances for that period of constructive service." *Stahl v. United States*, 167 Fed. Cl. 657, 691 (2023). This has been true for well over a century—dating back to at least 1866. *Smith v. United States*, 2 Ct. Cl. 206, 209 (1866) (finding that a member of the volunteer army was discharged "without cause" and ordering that he was "entitled to the pay and emoluments fixed by the law for that rank"); *Berry v. United States*, 107 F. Supp. 849, 855 (Ct. Cl. 1952) ("[W]e hold that plaintiff continued on his active-duty status and is entitled to receive the active-duty pay and allowances of an officer of his rank and length of service during the period September 1, 1946, through October 19, 1946."); *Register v. United States*, 128 F. Supp. 750, 752 (Ct. Cl. 1955) (finding a naval officer's release to inactive service was "improper" and that he was "entitled to pay and allowances until the date of his retirement"); *Egan v. United States*, 158 F. Supp. 377, 386 (Ct. Cl. 1958) ("While, as noted by defendant, the Secretary of the Navy has authority in a proper case to release any member of the naval service from active service in time of war or of peace, if the orders accomplishing that release are in some manner invalid, the person as a matter of law continues in an active duty status."); *Friedman v. United States*, 158 F. Supp. 364, 376 (Ct. Cl. 1958); *Clackum v. United States*, 296 F.2d 226, 229 (Ct. Cl. 1960) ("As we have said, the plaintiff is suing for her pay as a soldier, on the theory that her purported discharge was illegal and invalid."); *Dilley v. Alexander*, 627 F.2d 407, 413 (D.C. Cir. 1980) ("The corrected records should reflect that appellants constructively

---

[2] As the court noted in its previous Order, there was significant confusion—mostly on the part of the Government—surrounding "fitness to perform duties" and "fitness to separate." *Pope*, 162 Fed. Cl. at 578 ("In plain terms, Pope argued that he was unfit to separate, not that he was disabled. The court, like the BCNR, is aware of the difference between Pope's fitness to perform his duties and Pope's fitness to separate. Neither has been misled. The fact that the Government's motion is confused by the two terms is not sufficient to estop Pope from making his arguments.").

served during the period of their illegal discharge, but they should not contain any adverse reference to the passing over of appellants for promotion by the selection boards of 1975 and 1976."); *Adkins v. United States*, 68 F.3d 1317, 1327 (Fed. Cir. 1995) ("If the Court of Federal Claims finds that the Army improperly exercised its authority to retire Adkins, he will be entitled to back pay calculated in accordance with law and reinstatement to the rank of lieutenant colonel from the date of his retirement on August 1, 1992."); *Christian v. United States*, 337 F.3d 1338, 1341 (Fed. Cir. 2003) (internal citations omitted) ("Under [the constructive service] doctrine, military personnel who have been illegally or improperly separated from service are deemed to have continued in active service until their legal separation. They are, therefore, entitled to back pay and benefits for the intervening period, i.e., retroactive to their original separation from service."). The court, therefore, simply ordered the presumptive relief available to unlawfully separated sailors like Pope, just as this court and its predecessor have done for over 100 years.

Undeterred, the Government argues that this court should have remanded to the BCNR for further investigation and explanation into whether Pope was unfit if the court found a lack of support for that finding in the record. Generally, it is true that, if the BCNR has failed to explain itself, this court should send the matter back for further explanation. But this is not a case in which "the proper course . . . is to remand to the agency for additional investigation or explanation." ECF No. 58 at 5-6 (quoting *Strand v. United States*, 706 F. App'x 966, 1000 (Fed. Cir. 2017)). Again, the issue here is not that there is a lack of support in the record, but, as the court found, the controlling Secretary of the Navy Instruction *precludes* a finding that Pope's hypothyroidism qualified as a disability.

As the court explained, Pope's hypothyroidism is the only condition that could have rendered him unfit for continued naval service (*i.e.*, disabled).[3] Indeed, hypothyroidism is the sole basis for the BCNR's disability finding. The Navy has, of course, reduced to writing the circumstances in which hypothyroidism may qualify as a disability—cases of "[s]evere symptoms *not controlled by accepted therapy*." SECNAVINST 1850.4E § 8011(f) (emphasis added). The Secretary of the Navy did not have to issue SECNAVINST 1850.4E. Nor did the Secretary have to include a clear statement that hypothyroidism can *only* qualify as a disability in "severe cases *not controlled by accepted treatment*." SECNAVINST 1850.4E § 8011(f) (emphasis added). But the Secretary did. As this court stated before, "[t]he DoD and Navy wrote these rules and forces servicemembers to abide by them, and the Court will ensure that the Navy does so as well." *Pope*, 162 Fed. Cl. at 580. Thus, the court would not allow the Navy to make an end-run around Department of Defense Instructions or Secretary of the Navy Instructions. *Pope*, 162 Fed. Cl. at 580. Nothing presented in the government's motion for reconsideration changes that.

To be clear, if this case turned on whether Pope had "severe symptoms," this court would not hesitate to remand it for the Navy to make (or better explain) that determination. It is clearly outside this court's bailiwick to determine which symptoms are severe enough to qualify as a disability. The same is true if further factual development were necessary. But the record before

---

[3] *See Doyon v. United States*, 58 F.4th 1235, 1239 (Fed. Cir. 2023) (explaining that a disability retirement is the result "if the Secretary of their respective military department determines that [service members] are 'unfit' for duty").

4

the court is clear that Pope's hypothyroidism *was* being controlled successfully by accepted therapy when the Navy illegally separated him. The court's Order walked through the various doctor's notes from Pope's endocrinologist in 2014. 162 Fed. Cl. 582-83. These notes are not ambiguous. The doctor prescribed Pope medication and a week later noted: "He feels well. No neck symptoms. No tremor or palpitations. Weight stable." *Id*. at 582 (quoting ECF No. 19-1 at AR 223). After a follow up visit, Pope's endocrinologist noted that his "abn [abnormal] thyroid currently treated with nl [normal] values." *Id*. at 583 (quoting ECF No. 19-3 at AR 858). The record is thus clear that Pope's hypothyroidism was controlled by accepted therapy in 2014, which, of course, means that it could not qualify as a disability under SECNAVINST 1850.4E § 8011(f). There is simply no level of discretion that would change the outcome here because the BCNR is authorized to correct personnel records, not rewrite SECNAVINST 1850.4E. This fact clearly distinguishes *Strand*, which found remand appropriate because in that case "further administrative proceedings could remedy the defects in the Secretary's decision . . . ." *Strand*, 706 F. App'x at 998.

And the record, as the court explained, also makes clear that Pope was performing his actual job duties—and doing them very well according to all his superiors. Again, the ability to perform one's job duties is the *sole* standard by which the Navy must evaluate Pope's fitness. *Pope*, 162 Fed. Cl. at 578-89; *see also* SECNAVINST 1850.4E § 3301. This court further recognized that "[i]t is not enough to have a disease or injury. Rather, the disease or injury must '*materially* interfere with the member's ability to perform reasonably the duties of his or her office, grade, rank, or rating/MOS on active duty.'" *Pope*, 162 Fed. Cl. at 579 (quoting SECNAVINST 1850.4E § 3202(c)) (emphasis in SECNAVINST). In finding Pope disabled, the BCNR ignored Pope's performance of his duties. Pope put this issue squarely before the court in his MJAR briefing, but the Government chose to dismiss it as "nothing more than a red herring." ECF No. 29 at 17. The Government's desire for a mulligan is not a sufficient basis for the court to reconsider its decision or remand to the BCNR.

Nor has the Government explained why there must be a fitness determination in this case other than the Navy insists it is so (quite transparently to avoid paying Pope what he is owed for his illegal separation). The Government has not pointed to any statute, regulation, or instruction that requires a fitness determination in Pope's case. This failure has not been due to a lack of opportunity to make the argument—the Government has been free to make this argument from the start and its failure to do so does not justify reconsideration. Indeed, the court has tried to pry an answer out of the Government to no avail. ECF No. 60 at 25-26, 47-48; ECF No. 44 at 20-21, 59-60. Nor does there appear to be any reason to believe that Pope would have been referred to a Physical Evaluation Board ("PEB")[4] for a disability evaluation if the Navy had not unlawfully separated him. SECNAVINST 1850.4E quite clearly states that the mere presence of a disease "does not justify a referral" to a PEB for a fitness determination. SECNAVINST 1850.4E § 3202(c). Similarly, "[t]he inability to meet screening criteria for a specific assignment or administrative requirement; *i.e.*, deployment, overseas or sea duty assignment, or participation in PRT/PFT cycle does not justify referral." *Id*. § 3202(f). Again, this language is not ambiguous.

---

[4] Under SECNAVINST 1770.3D, only a PEB can make a fitness determination for an active-duty sailor.

In short, the court has not found any source of law that requires (or even permits) a fitness determination, and the Government has been unable or unwilling to provide one.

Finally, the court cannot accept the Government's argument that remand is proper here because the court has not previously remanded the BCNR's decision at issue now. In short, the Government contends that although Pope has been to the BCNR four times already, the fourth decision that is at issue now has not been remanded to the BCNR. Putting aside all the problems with the remand of this case for further disability evaluation addressed above and in the court's order, this argument lacks any limiting principle. Each time the BCNR issues a new decision, it is necessarily true that *that* decision has not been remanded. Taken to its logical conclusion, the only remedy this court could ever enter in a military pay case would be remand back to the Department of Defense for further consideration. But the Military Pay Act is a *money mandating* statute. *Pope*, 162 Fed. Cl. at 575 (citations omitted). In other words, when Pope succeeded on his Military Pay Act claim, he became entitled to a damages award rather than merely another chance to convince the Navy he is right.

Sadly, this case makes it necessary for the court to state what should have been plainly obvious at the outset. The military has a solemn duty to ensure service members who are disabled during their service receive proper disability benefits. *Chambers v. United States*, 417 F.3d 1218, 1224 (Fed. Cir. 2005). Indeed, disability care for service members is among the highest duties that we, the beneficiaries of their service, owe to them. The Navy is not free to discard its own written rules to label an illegally separated sailor "disabled" to avoid paying him for his unlawful separation. The disability system is not a get out of jail free card for the Navy and should never have been treated as such.

And Pope has good reason to be concerned that the BCNR is going to ignore this court's orders and binding law to fashion a plan to get out of paying Pope what he is due. *See* ECF No. 53 at 31-34. Indeed, the BCNR has taken it upon itself to grade this court's homework in other cases. *See* Decision on Remand of the BCNR, *Lowry v. United States*, 1:20-cv-00682-EDK (Fed. Cl. Feb. 18, 2022), ECF No. 43 at 11 ("The Board believes that the Court's conclusion was erroneous . . . [.]"); *id.* ("The Board found no merit in the Court's concern . . . [.]"). The BCNR should not be so willing to disregard this court's order in this case. Contrary to the Government's arguments, *see* ECF No. 48 at 6, the Navy has all of the information it needs: Pope was illegally separated, this court concluded that the separation was illegal, and absent that illegal separation, Pope would have most likely been transferred to the Fleet Reserve. There is no need for "further investigation" into facts that all parties admit as true.

Even more, to the extent the BCNR intends to rely on the 2020 health evaluation, that is not relevant to the illegal separation. *See, e.g.*, ECF No. 60 at 45-46. If the Navy never illegally separated Pope in 2014, then by 2020, by all likelihood, he would have been a member of the Fleet Reserve. That means in 2020, the most that could have happened after an adverse health report would be his transfer to the retired list. 10 U.S.C. § 8331.[5]

---

[5] Section 8331 cross-references 10 U.S.C. § 8385, which refers to members who have been recalled to active duty. Therefore, it is not clear that Pope's adverse health report in 2020 would have mattered unless he was recalled to active duty.

### B. Transfer to the Fleet Reserve.

The Government next argues that the court erred in ordering Pope's transfer to the Fleet Reserve because Congress gave the Secretary of the Navy the sole discretion to transfer or deny transfer of sailors with 20 years of active-duty service to the Fleet Reserve. The first question, of course, is why the Government did not argue any of this previously. In its briefing prior to the current motion to reconsider, the Government used the term "Fleet Reserve" exactly once. And that one reference was simply a summary of what Pope was asking for. *See* ECF No. 19 at 10. There was no counter to Pope's arguments based on prior cases in which transfer to the Fleet Reserve was included as relief in unlawful separation cases. *See* ECF Nos. 22, 29. The Government does not explain why it chose not to address the Fleet Reserve question before filing this motion to reconsider. Again, reconsideration is not justified when a party could have raised an issue before but did not do so.

But the Government may have a way out of its failure to address transfer to the Fleet Reserve until its motion to reconsider—if the transfer to the Fleet Reserve is outside the court's jurisdiction. Here, the Government argues that transfer to the Fleet Reserve is discretionary under the governing statute and, therefore, outside this court's jurisdiction. The Federal Circuit has warned that if an issue is non-justiciable, then this court may lack jurisdiction to hear the matter. *See Chambers*, 417 F.3d at 1224; *Roth v. United States*, 378 F.3d 1371, 1385 (Fed. Cir. 2004) ("Even if a court possesses jurisdiction to hear a claim, when that claim presents a nonjusticiable controversy, the court may nevertheless be prevented from asserting its jurisdiction"). However, if an issue has judicially manageable criteria to evaluate, then the issue might be justiciable. As the Federal Circuit explained:

> Even when Congress has given the military discretion in conducting its affairs, the military is bound to follow its own procedural regulations should it choose to promulgate them. A court may decide whether the military has complied with procedures set forth in its own regulations because those procedures by their nature limit the military's discretion. Such a case presents a justiciable controversy because the 'tests and standards' against which the court measures the military's conduct are inherent in the requirements of the applicable regulation itself.

*Fisher v. United States*, 402 F.3d 1167, 1177 (Fed. Cir. 2005) (internal citations omitted). Put another way, "a controversy is justiciable only if it is one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence." *Roth*, 378 F.3d at 1385 (cleaned up). In the military context, "justiciability is an especially appropriate inquiry." *Id.*

Because this is a question of interpretation, the court begins with the statute. As relevant here, the statute provides: "An enlisted member of the Regular Navy or the Navy Reserve who has completed 20 or more years of active service in the armed forces may, at his request, be transferred to the Fleet Reserve." 10 U.S.C. § 8330(b). As the Government now contends, Congress's choice of the permissive "may" indicates that transfer to the Fleet Reserve at 20 years is discretionary. *United States v. Rodgers*, 461 U.S. 677, 706 (1983) ("The word "may," when

used in a statute, usually implies some degree of discretion."); *Guilzon v. Comm'r*, 985 F.2d 819, 823 (5th Cir. 1993) ("It is well-settled that the word 'may' is a permissive term."). Of course, "may" does not always indicate discretion. Indeed, as the Federal Circuit explained in *Sawyer*, the military disability retirement is not discretionary despite the fact that the governing statute uses the term "may." *Sawyer v. United States*, 930 F.2d 1577, 1580 (Fed. Cir. 1991). Most notably, the disability retirement statute provides that once the relevant Secretary determines a service member unfit, that Secretary "may retire the member . . . ." 10 U.S.C. § 1201(a). Of course, the disability determination is not discretionary. *Kelly v. United States*, 69 F.4th 887, 900 (Fed. Cir. 2023).

Here, however, the discretionary nature of the transfer is bolstered by Congress's choice of wording of the 30-year retirement, which provides: "Each enlisted member of the Regular Navy or the Regular Marine Corps who applies for retirement after completing 30 or more years of active service in the armed forces shall be retired by the President." 10 U.S.C. § 8326(a). Given the use of "may" transfer at 20 years and "shall" retire at 30 years, the most natural reading is that Congress intended to make the transfer to the Fleet Reserve discretionary. *Huston v. United States*, 956 F.2d 259, 262 (Fed. Cir. 1992) ("When, within the same statute, Congress uses both 'shall' and 'may,' it is differentiating between mandatory and discretionary tasks."); *Grav v. United States*, 886 F.2d 1305, 1307 (Fed. Cir. 1989). Thus, the statutory scheme indicates that the transfer to the Fleet Reserve is discretionary.

But this does not end the inquiry because the Secretary of the Navy has delegated the authority to transfer sailors with 20 years to the Fleet Reserve, and regulations governing such transfers are largely non-discretionary. Of course, "[i]t has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all . . . ." *Voge v. United States*, 844 F.2d 776, 779 (Fed. Cir. 1988). Here, OPNAVINST 1811.3A provides: "To support these objectives while providing equity and consistency in retirement options for members on active duty, the criteria in this instruction are intended to be applied uniformly to all officer competitive categories and enlisted ratings, except where otherwise specifically provided." The criteria in OPNAVINST 1811.3A are objective and cabin discretion in the transfer to the Fleet Reserve. Similarly, MILPERSMAN 1830-040 ¶ 3(a) lists the eligibility criteria for transfer to the Fleet Reserve, including 20 years of active service, applicable tour record, time in grade requirements, etc. And MILPERSMAN 1830-040 ¶ 4 lists the disqualifications for transfer to the Fleet Reserve, including awaiting disciplinary action, serving a court martial sentence, or awaiting administrative discharge.

If the directives and instructions ended here, the court would have a strong basis to let its prior order stand. Indeed, Congress appears to believe that transfer to the Fleet Reserve is likely to be the norm given that it created the safe harbor of 10 U.S.C. § 1176 at year 18. If Congress did not expect transfer to the Fleet Reserve to be the norm, it is odd that it created the safe harbor from year 18 to 20. If the only thing that was expected was the mandatory retirement at year 30, the safe harbor would have made more sense at year 28.

And the Navy too appears to understand transfer to the Fleet Reserve to be the result of satisfying the eligibility criteria. Pope's counsel filed a Freedom of Information Act request "seek[ing] copies of all decisions by the Secretary of the Navy or his/her delegated authority to decline to transfer enlisted members of the Navy and Marine Corps to the Fleet Reserve upon

8

retirement eligibility for reasons other than substantiated misconduct." ECF No. 53-2. The Navy office responsible for transfers to the Fleet Reserve responded that it was "unable to locate any records responsive to your request. They further explained *all* eligible members who request transfer to the Fleet Reserve are approved in accordance with MILPERSMAN 1830-040." *Id*. (emphasis added). The court does not read this admission as a binding statement of the law; rather, it simply reflects that the Navy office responsible for approving transfer to the Fleet Reserve understands that the transfer is effectively automatic under the personnel manual for those meeting the objective eligibility requirements. And the court recognizes that this is not a statement of the Secretary himself.

All that said, the Secretary's delegation of authority to approve transfers to the Fleet Reserve explicitly retains Secretarial discretion to transfer or deny transfer to the Fleet Reserve. *See* OPNAVINST 1811.3A ¶ 8. Thus, the decision to approve the transfer is still discretionary. *Paalan v. United States*, 51 Fed. Cl. 738, 743 (2002), *aff'd*, 120 F. App'x 817 (Fed. Cir. 2005) ("Transfer to the Fleet Reserve is discretionary."). Therefore, the court concludes that it was an error of law to order the Navy to transfer Pope to the Fleet Reserve even though the record in this case strongly supports that but for the illegal separation he would have been transferred to the Fleet Reserve upon his request.

Accordingly, the court will amend its prior Order to remove the transfer to the Fleet Reserve. The court will remand the question of Pope's transfer to the Fleet Reserve to the BCNR for it, or the appropriate official within the Navy, to decide in the first instance. For the avoidance of doubt, the Navy may not, consistent with this order, reject Pope's transfer based on the "disability" resulting from his thyroid condition that this court has set aside as arbitrary, capricious, and contrary to law.

### C. This court was not using "retired pay" as a term of art and clarifies that section of its prior decision.

The Government claims it was clear error for the court to order "retirement pay" when it ordered Pope transferred to the Fleet Reserve. ECF No. 48 at 10. As the Government explains, Congress uses different terms for the pay that someone in the Fleet Reserve is entitled to and the pay that a retiree is entitled to. Under the relevant provisions, an enlisted sailor that retires after 30 years of active-duty service is entitled to retirement pay. 10 U.S.C. § 8331(c). That, of course, does not apply to Pope. Rather, the court ordered his transfer to the Fleet Reserve. In such a status, the proper term to have used would have been "retainer pay." 10 U.S.C. § 8330(c). The court did not intend "retirement pay" in its statutory sense but agrees that the proper term the court should have used was "retainer pay." Because the court is remanding the issue of transfer to the Fleet Reserve, the court's amendment of its Order will remove this reference.

### III. Conclusion

Based upon the foregoing, the court:

1. GRANTS-IN-PART and DENIES-IN-PART the Government's motion for reconsideration, ECF No. 48 (amended by ECF No. 51).

2. VACATES-IN-PART the court's prior Order, ECF No. 45, as explained herein.

3. Pursuant to RCFC 52.2, Remands this matter to the BCNR with the following instructions:

   a. The BCNR shall rescind its June 17, 2020 decision and issue a new decision on whether plaintiff, Brian Edward Pope, is entitled to correction of his military records to reflect transfer to the Fleet Reserve following constructive serve to his eligibility date, taking into account the errors identified in this opinion and the court's amended opinion on the cross motions for judgment issued contemporaneously with this opinion.

   b. This remand shall not exceed 75 days, during which time this proceeding shall remain stayed.

   c. Pursuant to RCFC 52.2(b)(l)(D), defendant shall file a status report on or before August 28, 2024.

   d. The parties shall file a joint status report no later than seven days following the date defendant receives notice from the BCNR of the conclusion of the remand proceeding. The joint status report shall set forth the parties' positions regarding whether further litigation is necessary. If the parties anticipate further litigation, they shall provide (1) a proposed date for defendant to file the administrative record associated with the remand proceedings, and (2) a proposed briefing schedule for any dispositive motions.

The Clerk is directed to serve this Opinion and Order, along with the Amended Opinion and Order issued contemporaneously with it to the Navy Board for Correction of Military Records at the following address:

Board for Correction of Naval Records
Elizabeth A. Hill, Executive Director
701 South Courthouse Road
Building 12, Suite BE140
Arlington, Virginia 22204-2490

It is so ORDERED.

s/ Edward H. Meyers
Edward H. Meyers
Judge
